Good morning. May I please the court. Martin Abraham on behalf of Petitioner Asal Nazi, I would like to reserve two minutes of time for my rebuttal. I would like to point out that credibility is not at issue at this case. The issue here is whether by ignoring petitioner's argument and by misapplying the law, the board errantly denied petitioner's motion to reopen for relief based on change country condition. The other issue is whether BIA applies strict standard in evaluating petitioner's motion to reopen for prima facie eligibility. Board held petitioner to incorrect legal standard and failed to properly consider much of irrelevant evidence therefore abusing his discretion in denying motion to reopen. What was the improper standard that the board applied? When petitioner submitted evidence of declaration photos and supplemental declaration and country conditions, the board held that it's insufficient to show whether her involvement in the protests by the federal building as well as silent vigil in Irvine, California. What was the standard the board should have applied in your view? In order for the petitioner to prove asylum, the petitioner needs to prove that there is at least 10% chance that she will get persecuted if returned back to Iran. In this case, it seems like the board, in the 2009 decision, the board arbitrated and irrationally and contrary to the law made the decision. The board without proper consideration of petitioner's argument essentially raised the threshold requirement for the reopening of the case. So if we're in the record, can you point to confirm your statement that the board raised the standard for her? In 2010 decision, your honor, the board essentially stated that respondent has not identified how the current political and military situation in Iran and civil unrest related to the recent election in Iran reflect change from the time of her hearing and or her motion to reopen in respect to the noted allegations such that reopening is appropriate. Also the board stated that submitted evidence information, however, contains, does not satisfy the prima facie evidence the respondent would directly be affected. What's wrong with that? It seems like it's requesting from the petitioner putting more burden. The petitioner submitted evidence of declaration, as I stated, and evidence of country conditions. In order for petitioner to be able to prove her role in the demonstrations besides her participating and her declaration stating that she's against Iran's regime and the current president and the cabinet of cracking down on women's rights, people's right to express their opinion against the government's oppression. The only way it seems like the board is requesting for the petitioner to provide evidence is for petitioner to be deported back to Iran and become one of the victims. Well, it may not make a lot of sense, but our case law does require some demonstration of individualized risk, and I understood, at least I understood from the briefing that part of your argument is that she did establish individualized risk, and therefore it was error to say that she didn't show a prima facie case of eligibility because she had participated sufficiently to be one of those political activists that is subject to greater problems. Your Honor, she stated that she participated in plural demonstrations. She also presented evidence that people are persecuted in Iran, and the people that are persecuted or killed are not people that are prominent in politics, are not front runners, are not people who are standing in front of the protest and expressing their opinion, are people who are marching with the rest of the people. She's expressing her fear that if, since she's been demonstrating here and she comes from a family who's, from a family who the father, the mother, and the aunt were politically involved in Iran. She's saying that I am still politically involved and I will be politically involved, whether here or in Iran. How do you distinguish the facts in this case from the facts in Najm-e-Badi, which was somewhat similar and on which the BIA relied here? Your Honor, I apologize. I'm not familiar with that case. Well I mean I think in that case, you're not going to be able to help because you haven't read it, but it's, I mean there I think it was mainly the petitioner was saying I'm a sort of tip off the regime to, you know, that I might be opposed to it. Whereas here I think your argument would be that it's not just that she's been living in the United States for a good chunk of her life, but also that she's got this extra component of actually being politically active herself. Is that the? Correct, Your Honor. Here in her motion to reopen, petitioner requested the board to reopen her case, not merely because she's an invisible and general member of the particular social group, or merely as a political dissenter, but outspoken woman with strong westernized mentality and woman who has actively exposed herself as a social and political dissenter to the Iranian authorities. Remind me, when did these two, at least the two demonstrations that we, or the one was a demonstration and one might have been a vigil, but when did those occur? What year? Your Honor, she doesn't specifically state exactly when it was, but this was after the 2009 elections. It was, okay, that's what I was making. Yes, correct. After 2009 elections, there were protests around Iran, and what happened was in order for the government to suppress the demonstrations, they cut off all the communication to outside world. This is when all the atrocities happened. This is when all the killings happened. More than 100 people were arrested and put on trial. According to Amnesty International, more than 27 people were killed. People like the petitioner, people who were before their disappearance or before they were killed, they were invisible. People like Neda, as she mentioned, the person who became the symbol of women's rights and symbol of revolution. We don't want her to become another Neda. We don't want her to go back and continue for something to happen to her, then for her to be able to come back and say, see, this is what happened to me. Now, please give me asylum. She is basically asking from this court to remand the case back to immigration judge for her to have her day in court and present her evidence. She's been here since she was 15, 16 years old. She was suppressed and she was a woman in Iran. According to Iran's constitution, she's considered inferior to men. She strongly believes that if she goes back, she's going to be another victim. Her name is going to be erased from Iran's history and she'll never be able to present her case. Petition also understood that she had to prove well-founded fear of future persecution. As this court has held in Oxavi-Ashcroft, well-founded fear does not require certainty of persecution or even probability of persecution. Even a 10% chance of persecution can establish well-founded fear. The applicant also understands that the applicant did not show that she will be singled out individually for persecution if the applicant establishes that there is a pattern or practice in his or her country of persecution of a group of persons similarly situated to her and that she is within that group, according to Rusak-Beholder. This court held in Rusak-Beholder that while Mr. Rusak's own direct experience in Belarus may not raise to a level of persecution on the ground as well, she's not required to demonstrate that she's individually suffered persecution if she can establish a pattern or practice of persecution similar to her and that she's a member of such a group such that the fear of persecution upon return is reasonable. She has reasonable fear. Good morning, Your Honor's Counsel. My name is Margaret Taylor. I represent the government in this matter. Counsel, I want to begin by asking you a question sort of from the sidelines in a way. Our file notes indicate that this was a case in which mediation was attempted and apparently was the government's position that mediation would not, renewed effort at mediation would not be appropriate in this case. That is our position. From the record, it appears that the petitioner is married to a U.S. citizen and at least our records don't show any criminal background, but is that still the government's position? It is the government's position and I, you know, this is prosecutorial discretion obviously is something the court doesn't have jurisdiction to review. Correct. We just have noticed that it's been exercised pretty frequently. We've had several cases taken off our docket this week for that reason. Yes. One of the problems, and this is of course outside the record. You don't have to tell us that. No, no, I'm not going to, I wasn't going to tell you about the prosecutorial discretion discussions, but there is a problem with the case in terms of Ms. Nazee relying on her marriage to a U.S. citizen. Well, that's fine. Let me ask you though about the actual decision here. It looks to me like the BIA did acknowledge that some of the evidence was new and it showed a crackdown on activists and on women who did not want to wear more traditional dress. So there is some new evidence and she seems to fall into the category that the new evidence is directed towards. That is, I'd like your comment on why the decision was correct in saying that she would not have a prima facie case of relief from removal for a well-founded fear. Well Your Honor, I noticed also from the discussion with my friend and opposing counsel that you are focusing on the prima facie aspect of this case and I would like to answer your question. But I would like, if the court would allow me, to put this case into its proper procedural perspective, which is that Ms. Nazee is seeking a motion to reopen, two motions to reopen, both of them barred. Motions to reopen are disfavored and so what she's really looking for is an exception to a disfavored motion to reopen. Right, on the ground of changed country conditions. And so my concern is that the BIA in its 2009, I believe, 2008 decision said, yeah, there's some new stuff and it shows that things are getting worse for women and activists. So the BIA acknowledged this, that there's something new. Well, but the board also in 2008 rejected, decided that Ms. Nazee did not merit this exception because the evidence that she provided was not new. She pointed... But they also said some of the evidence is new. That was my exact problem that I was trying to convey, not very artfully, I guess. Because on page two, what is the page number? I'm sorry. I believe it is 566, the BIA does say, other reports that were issued more recently indicate a crackdown on dress for women and activists. I'm foreshortening that sentence. But they do seem to say, well, there's some stuff that's new. We just don't think it's material. And that was of concern to me. Well, at that point it was not material for Ms. Nazee because she was not an activist yet at that time. That was in 2008 and her activism, her evidence of activism came after this decision. So the board was absolutely right that it wasn't pertinent to her claim because she hadn't claimed activism at this point. What's our standard of review? Is it abuse of discretion? It is. Is there something else that you'd like to ask me? Well, I'd like to make a number of points then. And certainly if your honors have more questions, I'd love to answer those. Yeah, I'm focused more on the second, I guess, what you're calling the second motion to reopen, the post 2009, the 2010. I'm calling it the third one, but second will work. To me, it's not even, I don't even know if that's fair to her, given that she was a minor when the other proceedings were occurring. But put that aside. It does seem like things got dramatically worse in Iran after the 2009 elections and that given her post 2009 election political activism that she seems to be at greater risk certainly than perhaps than the petitioner in Najmabadi. But maybe you'll tell me that that case is not distinguishable. But I'd like to hear what you have to say about that. I'm not so much focused on the 2008 BIA decision. I'm focused more on the 2010 decision because it seems to me by that point, if you put together everything that knew that she had presented, that it does cast her case in a pretty different light from what it might have appeared back when she was a writer on her father's asylum application. Well, the abuse of discretion is the standard. And what the board said in the 2010 decision is that her evidence of participation in these demonstrations was that she was a minor. And that this demonstration was vague and poorly supported. And that she didn't even say what position, whether she was associated with an organization, what position the organization was taking. And so the board rejected that evidence because it was so thin. And given the fact that this is an exception to a motion to reopen, that is disfavored. That's pretty thin evidence. We're not, I mean, neither we nor the BIA is trying to decide on the basis of what she's presented whether she's going to be granted relief today, right? She's just saying, all I want is a chance to have my case heard. I've never even had a single opportunity to because everything that happened before concerned my father. Well, I mean, she has had an opportunity to have her case heard. In the record on page 173 and on 176, this is, I'm sorry to keep bumping into that. When she was appearing with her father before the immigration judge, the judge specifically asked, are there going to be two asylum applications or one? And then again asked, well, is Ms. Nozick going to be testifying? She was 16 years old and it turned out that her father wasn't credible. So is she, the sins of the fathers are visited on the daughters here because there's nothing to indicate that anything that she's put into these papers is not credible. We have to take it as true. And his testimony about his experiences in the military or whatever are completely different issues than what she's raising. Well, but if you look, first of all, she is relying, she says she's relying on dual reasons in her motions to reopen and saying she's relying on what happened to her father and what's happened. Well, all she needs is one. So suppose that everything she says about her father should be just be swept away. That still doesn't really answer whether on her own hook what she has presented entitles her to reopening. Well it, what you are describing, Your Honor, is more in the realm of a successive asylum application rather than a motion to reopen. And the Board has held, and this Court has agreed with the Board that successive asylum applications have to be made before the deadline, before the motion to reopen deadline, which is 90 days. And those two cases are a matter of CYL, and I can 28J them, and Chen v. Mukasey. But in this context, in the motion to reopen context, she doesn't have an opportunity to do that. I see my time is up, but I would like to go back to the very first question that you asked that I haven't had a chance to answer. Which is that the I-130 from Ms. Nazee's second husband, Ms. Nazee falls into an odd slot because she came here on a K-2 visa, which is the minor child of a fiancé, and then the marriage was never celebrated. And so when she came, there was a 90-day window for her to stay. And under INA 245D, if you come in under a K visa, you can't adjust the regular way. Now in the record there is a reference to a prior attorney, I think were two or three ways to do this, to get around this, is to get parole from the DHS and then get counselor processing. And also she has deferred action. So even though Ms. Nazee is in a difficult procedural posture, because she's on a motion to reopen, an exception, and she has this K-2 problem, there are ways that her attorneys can help her regularize her adjustment here. So if that's true, I don't understand why the government is resisting mediation, but it's the government's prerogative to do that, so. Our client has decided not to exercise prosecutorial discretion and Ms. Nazee doesn't want anything else. Thank you. Thank you. We ask that the court deny the petition for review. Thank you. And as counsel stated, that there was no change of country condition. Of course there was change of country condition. Well, it didn't say there were no change of country conditions, that she didn't show sufficiently that her individual circumstances were made worse by the change of country conditions. She had an obligation to show that whatever change of country conditions existed would affect her individually. And the agency said the evidence that you've shown us does not convince us that the change of country conditions that you have stated will affect you individually. I understand, Your Honor. But if that was the case, let's just say she came when she was six months old, she wouldn't be able to show there was change of country condition from when she was six months old that she would affect if we would go back in time. But that's the standard, that she has to show that if she went back to Iran, even though she's been in this country all of these years, the change of country conditions would affect her, and she would be persecuted there. That's the standard. She was able to show, as BI in the 2008 decision stated, they understand they were very sympathetic to the petitioner, but at the same time they see there were changes against the woman. The conditions for women in Iran got worse. Not enough, though. Just to show that conditions are worse for women generally is not enough to meet the standard if there is a failure to show that those conditions will affect her individually. She was able to show, Your Honor, because she was able to show after the 2009 election the country conditions dramatically changed, especially for women who were active in politics. And as one who's active in politics, whether it comes from her family history or whether it's her belief that she is participating in the protest, I understand the government's position and the BIA's opinion that stated that she didn't in particular state exactly how she was involved in the demonstrations, but she was demonstrating. She was presenting herself as a person who's against the Iranian government regime. Generally in a case like this where a motion to reopen is successful, the petitioner is able to show that the government in the country to which she would be deported is aware of the activities and has indicated some inclination to target them when they return. That's usually the kind of evidence we see in those cases where there is a successful motion to reopen. I understand, Your Honor. At the same time, the burden is on her to show well-founded fear of future persecution. She can show that by pattern and practice in the country. Twenty-seven people were killed according to Amnesty International. Some of these people that were killed were just like her. They're not politically prominent people, front-runners who were in protest up front holding the banners. They were sometimes in the back. And the person who was killed, the person who became the symbol of revolution, the symbol of freedom for women's rights, Neda was killed in front of her family. She was shot in the neck. And as she stated in her declaration, because the regime understood that if they brought up Iranian army to protect the regime, they would not shoot against their own people. That's why they brought 500 soldiers from Hamas. It shows the government and shows changed country condition. It shows that as a politically active woman who's westernized in the United States, she will be persecuted. She'll be targeted. She will not, even if she goes back, she's not going to stop protesting against the regime. She's going to fight until she sees Iran being a democratic country. And hopefully it will change one day. Thank you. Thank you, counsel. If I may add, in this case, petitioner requests for the case to be remanded to BIA with order to the immigration judge so she can have her day in court. Thank you. Thank you, counsel. The case just argued is submitted and we appreciate the helpful comments from both of you.
judges: Graber, Rawlinson, Watford